UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIO DE JESUS ANTONIO,

Petitioner,

v.

JULIO HERNANDEZ, in his official capacity as Acting Seattle Field Office Director, U.S. Immigration and Customs Enforcement, et al.,

Respondents.

CASE NO. 2:26-cv-03532-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Mario de Jesus Antonio's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the petition, Respondents'[1] return, Petitioner's traverse, and the relevant record, the Court GRANTS the petition.

[1] As used in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

## I. Background

Petitioner is a native and citizen of Mexico. Dkt. No. 15-1 (DHS Form I-213) at 2. He entered the United States at an unknown date and time without inspection 28 years ago. Dkt. No. 16 at 2. He has family and residential ties to Oregon, where he lives with his wife, daughter, and two minor grandchildren. *Id.* Petitioner has no criminal history and, prior to his current detention, had never been in contact with immigration enforcement. Dkt. No. 15-1 at 4.

On September 12, 2026, Petitioner was detained by Enforcement and Removal Operation ("ERO") officers. *Id.* at 3–4. That day, during ERO enforcement operations, the officers encountered a White Toyota Tacoma parked in a public parking lot. *Id.* at 3. The officers viewed the license plate and confirmed the vehicle was associated with a person they describe as "Inadmissible alien Mario de Jesus Antonio." *Id.* Officers observed Petitioner and his son enter the vehicle and believed that Petitioner matched the "physical likeness" of Mario de Jesus Antonio. *Id.* After conducting "record queries of official law enforcement, immigration, and public databases," the officers determined they had probable cause to arrest Petitioner for immigration violations. *Id.* The ERO officers wrote in their report that at 1:31 p.m., an ERO supervisor issued an I-200 administrative warrant of arrest for Petitioner. *Id.* Three minutes later, the on-scene officers executed the warrant by pulling the vehicle over, ordering Petitioner out of the vehicle, and detaining Petitioner. *Id.* Petitioner's son, Hector de Jesus Apreza, who was present during the detention, avers that the ERO officers did not identify themselves, did not show or produce a warrant before taking Petitioner into custody, and, other than asking Petitioner his name, did not indicate any reason for the detention. Dkt. No. 1-2 (de Jesus Apreza Decl.) ¶¶ 8–9, 17.

Officers took Petitioner to the Portland, Oregon, Immigration and Customs Enforcement ("ICE") office for processing. Dkt. No. 15-1 at 4. At the office, Petitioner was shown a Notice to

Appear ("NTA") but refused to sign the document. Dkt. No. 15-5 (NTA) at 4; *see also* Dkt. No. 16-1 (de Jesus Antonio Decl.) at 2 (asserting he refused to sign any paperwork because he was not given a phone call). Petitioner was then transported to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained. Dkt. No. 14 (Subero Decl.) ¶ 10. Petitioner was scheduled for a master calendar hearing for October 14, 2026. *Id.* ¶ 9. As of the date of the petition, Petitioner had not requested a bond hearing. *Id.*

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.2d 628, 638 (9th Cir. 2004)—that is, they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 § U.S.C. 2241(c).

## III. Discussion

Petitioner's primary request[2] is that the Court order him "released from unlawful custody or grant such other habeas relief as law and justice require[.]" Dkt. No. 1 at 14. In support of the request, Petitioner makes several arguments as to why his detention is unlawful, including: (1) violation of 8 U.S.C. § 1357(a)(2); (2) violation of his Fifth Amendment Due Process rights; and (3) violation of his Fourth Amendment rights. *Id.* at 13–14. The Court will address Petitioner's claims and Respondents' responsive arguments in turn.

[2] Petitioner makes several requests that relate to stopping his transport from Oregon to Washington—requests that are now moot. Further, his fourth ground for relief also relates to stopping his transfer from Oregon to Washington, meaning the Court need not address those arguments either.

**A. Petitioner's Arrest Was Unlawful**

**1. Applicable Statutes, Regulations, and the Oregon District Court Injunction**

As a preliminary matter, the Parties agree that Petitioner's detention is governed by 8 U.S.C. § 1226(a). *See* Dkt. No. 13 at 3; Dkt. No. 16 at 6. In general, an immigration officer can make an arrest without a warrant, pursuant to 8 U.S.C § 1357(a)(2), if, in relevant part, "he has reason to believe that the [noncitizen] so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" Section 1357(a)(2) is implemented through regulations including 8 C.F.R. § 287.8(c)(2)(ii), which states, "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." Relevant here, Section 1226(a) states, "On a warrant issued by the [Secretary of the Department of Homeland Security], [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." The implementing Department of Homeland Security regulation is 8 C.F.R. § 236.1, which states, in relevant part, "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). Against this statutory and regulatory backdrop, the Court moves on to the District of Oregon injunction Petitioner raises.

Earlier this year, a class of petitioners in Oregon sought a preliminary injunction in the United States District Court for the District of Oregon prohibiting immigration enforcement from conducting warrantless arrests "without first making an individualized probable cause determination of potential arrestees' risk of escape, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii)." *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d. 1147, 1159 (D. Or. Feb. 27,

2026). Relying on extensive evidence including oral testimony, exhibits, and declarations, the District of Oregon court found that, among other practices, Immigration and Customs Enforcement ("ICE") agents in Oregon have a "practice of fabricating warrants after arrests were made." *Id.* at 1179. The court found that such a practice "is highly probative of ICE's failure to make individualized determinations of one's escape risk prior to arresting them." *Id.* Ultimately, the court found "ample evidence in this case demonstrates a high likelihood—if not a certainty—that Defendants are engaging in a pattern and practice of unlawful conduct in Oregon that will continue to harm class members absent injunctive relief" and granted the petitioners' motion. *Id.* at 1184. The order enjoined the defendants and their officers from "enforcing their policy or practice of making warrantless civil immigration arrests in the District of Oregon without a pre-arrest individualized determination by the arresting officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii)." *Id.*

**2. Petitioner's Arrest Violated 8 U.S.C. § 1226(a), 8 U.S.C § 1357(a)(2), the Relevant Regulations, and the Oregon District Court Injunction**

Petitioner argues that he was arrested without a warrant and that the arrest did not comply with the requirements of Section 1357(a)(2). Dkt. No. 1 ¶¶ 46–49. In support of this, he provides a sworn declaration from his son, Hector de Jesus Apreza, who witnessed Petitioner's arrest. *See generally* Dkt. No. 1-2. Mr. de Jesus Apreza provides the following: (1) "I did not hear the ICE officials otherwise identify themselves or provide my father with their names or credentials"; (2) "I did not see any ICE official show or produce a warrant to my father before taking him into custody"; (3) "Other than asking my father whether his name was Mario de Jesus Antonio, I did not hear the ICE officials provide any reason for approaching or detaining him before they took him into custody." *Id.* ¶¶ 8–9, 17. In their return, Respondents argue that Petitioner was detained

pursuant to a lawful administrative warrant, citing the Form I-213, which includes an officer narrative. *See* Dkt. No. 13 at 8–9. The narrative asserts that an ERO supervisor issued the warrant at 1:31 p.m. and that Petitioner was arrested three minutes later at 1:34 p.m.[3] Dkt. No. 15-1 at 3.

In reviewing the full record before it, the Court finds the ERO officers conducted a warrantless arrest of Petitioner. Although the ERO narrative states that the administrative warrant was issued three minutes before the arrest, additional evidence before the Court shows otherwise. Petitioner's son was an eyewitness to the arrest and gave a sworn statement that the ERO officers did not show or mention a warrant to Petitioner. Dkt. No. 1-2 ¶¶ 8–9, 17. Moreover, the warrant provides that it is "based upon" (1) "the execution of a charging document to initiate removal proceedings against subject"; and (2) "reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." Dkt. No. 15-2 (Form I-200 Administrative Warrant) at 2. There is a problem with each of these rationales. First, to say that the warrant was based on the charging document, which in this case is the Notice to Appear ("NTA") implies that the NTA was issued before or at the same time as the warrant. But as Petitioner points out, the NTA was issued after Petitioner's arrest (Dkt. No. 16 at 8), which is evidenced by the fact that the arrest took place in Milwaukie, Oregon, and the NTA was issued at the Portland, Oregon, immigration office nearly an hour after officers claimed the arrest took place (*see* Dkt. No. 15-3 (NTA) at 2). The problem with the ERO officers' second rationale for the administrative warrant is that despite the fact that they assert they discovered during "record queries of official law enforcement, immigration, and public databases" that Petitioner had committed immigration violations, there is no evidence for

---

[3] Respondents also argue that even if Petitioner's arrest was unlawful, the remedy is not release. The Court addresses these arguments below. *See infra* III.D.

this assertion. Petitioner argues that it would have been impossible for ERO officers to have any kind of record indicating that he is present in violation of immigration laws because he has no criminal history, has never filed any applications with DHS, and has never had any contact with immigration officers; therefore, it is implausible that he would be in an immigration database. Dkt. No. 16 at 5. Petitioner suggests that whatever "Mario de Jesus Antonio" ERO had a record of as being inadmissible was a different person who shares the same relatively common name. *Id*. Respondents' own ERO narrative asserts that Petitioner has no prior criminal or immigration history. Dkt. No. 15-1 at 4. Therefore, the Court agrees that it is implausible that any database would show that Petitioner was present in this country unlawfully. *See Almonte v. Genalo*, No. C26-3633, 2026 WL 2983349, at *9 (E.D.N.Y. Oct. 5, 2026) ("The claim that database quer[y] checks could 'positively identify' petitioner appears spurious as, without any immigration record, petitioner would not appear in any ICE database from which he could be positively identified").

Additionally, Petitioner raises that, even if the ERO officers had produced a warrant at the time of the detention, it was invalid because it was issued before the NTA. Dkt. No. 16 at 7. Petitioner is correct. The implementing regulation for Section 1226(a) states that "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). As such, an arrest warrant under 1226(a) cannot be issued until an NTA has been issued. Consequently, even if ERO officers had a warrant, it was invalid, making this a warrantless arrest.

Given that the ERO officers arrested Petitioner without a warrant, that means they violated the Oregon district court's injunction barring the practice of warrantless arrests. *See M-J-M-A-*, 822 F. Supp. 3d. at 1184. And even though ERO officers can lawfully arrest

noncitizens without a warrant under certain circumstances, there is no evidence here that the ERO officers complied with Section 1357(a)(2) by determining that they had reason to believe that Petitioner was present in violation of United States law and that Petitioner would be likely to escape before a warrant could be obtained.

Therefore, the Court finds Petitioner's arrest was unlawful.

**B. Petitioner's Present Detention Is Unconstitutional**

Petitioner raises a claim that his due process rights were violated when he was arrested without a warrant and without the immigration officer making an individualized determination that Petitioner posed a danger to the community or a flight risk. Dkt. No. 1 ¶ 52. Accordingly, the Court conducts the analysis below in light of the relevant statutory and regulatory requirements.

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

In *Mathews*, the Supreme Court established a three-part balancing test for determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Parties acknowledge the relevance of the *Mathews* analysis here. *See* Dkt. No. 13 at 5–7; Dkt. No. 16 at 11–13. Consistent with persuasive authority, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's detention comports with constitutional due process requirements.

**1. The Private Interest Affected by the Official Action**

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz*, 53 F.4th at 1199.

Respondents concede the "weighty liberty interests" that noncitizens have but argue that Petitioner's liberty interest is diminished because he resided in the United States unlawfully, hasn't applied for lawful status, and hasn't sought a bond redetermination hearing. *See* Dkt. No. 13 at 5. The Court finds these arguments unpersuasive. Here, Petitioner has a substantial and inherent interest in retaining his "[f]reedom from bodily restraint." *Foucha*, 504 U.S. at 80. Petitioner has lived in the United States for 28 years, and prior to his detention, lived in Oregon

with his wife, daughter, and two United States citizen minor grandchildren. Dkt. No. 1-1 ¶¶ 6–8; Dkt. No. 16 at 2. He is employed as a painter in residential construction and remodeling, and his family relies on his income to pay for rent, utilities, groceries, and other household expenses. *Id.* ¶¶ 5–6. Petitioner's community ties are strong, as exemplified through the various support letters he provides from friends and co-workers. *See* Dkt. No. 16-1 at 2–17. Across decades of living in the United States, Petitioner has no criminal history. *See* Dkt. No. 15-1 at 4. Courts in this District have recognized a significant liberty interest where a noncitizen has established community ties. *See, e.g.*, *Rivas Gomez v. Scott*, No. C26-3505, 2026 WL 3438023, at *3 (W.D. Wash. Nov. 12, 2026) (finding first *Mathews* factor weighed in petitioner's favor where petitioner had no criminal history and significant community ties, such as family and work); *Cortez v. Hernandez*, No. C26-3708, 2026 WL 3168034, at *2 (W.D. Wash. Oct. 22, 2026) (finding first *Mathews* factor weighed in petitioner's favor where he "lived in the United States for 27 years, was released on bond in 2011, and has strong family and community ties in the country"). Therefore, the first *Mathews* factor weighs in Petitioner's favor.

**2. The Risk of Erroneous Deprivation of Liberty and the Probable Value of Procedural Safeguards**

As to the second *Mathews* factors, Respondents argue that existing implementing regulations and the procedural safeguards that come with them—service of an administrative warrant for arrest, a notice of custody determination, and a notice of rights and advisal, as well as Petitioner's ability to request a custody redetermination hearing and appeal any ruling from such a hearing—are sufficient to protect Petitioner's liberty interest and mitigate the risk of erroneous deprivation. Dkt. No. 13 at 5–6. In his traverse, Petitioner argues that this factor weighs in his favor because he was "arrested and detained . . . without considering whether he is a danger to the community or a flight risk," meaning the risk of violating due process is exceedingly high.

Dkt. No. 16 at 12. As discussed, ERO conducted a warrantless arrest. Not only was there a warrantless arrest, but there is no evidence that, prior to the arrest, the ERO officers accurately confirmed that Petitioner was in the United States unlawfully or had any basis to believe that he was likely to escape before a warrant could be obtained. The narrative that discusses the arrest provides no details as to the finding of Petitioner's "immigration violations" and does not discuss risk of flight at all. *See* Dkt. No. 15-1 at 3–4. Rushed, on-the-spot arrests of this nature likely based upon racial profiling create a very high risk of erroneous deprivations of liberty. That is, in fact, what happened here. Relevant to Petitioner, the District of Oregon court saw these types of arrests as erroneous, so much so that it issued a preliminary injunction barring them, finding that the "class members face irreparable harm due to the Defendants' pattern and practice of conducting warrantless arrests without individualized escape risk determinations." *M-J-M-A-*, 822 F. Supp. 3d at 1183. Here, the damage has been done: Petitioner was seized, detained, transported across state lines, and detained for months because of an erroneous deprivation of liberty. Not only that, but his arrest was in violation of the district-wide injunction in Oregon barring such arrests. Therefore, the second *Mathews* factor weighs in Petitioner's favor.

### 3. Respondents' Interest in Detaining Petitioner Without Complying with Procedural Requirements

The third *Mathews* factor addresses Respondents' interest in detaining Petitioner without immigration officers first determining whether they "ha[d] reason to believe that the [noncitizen] so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]". 8 U.S.C. § 1357(a)(2). Respondents argue that "the government's interests in efficient enforcement, protecting the community, and ensuring Petitioner's appearance at removal proceedings are substantial." Dkt. No. 13 at 7. But this interest is present in all removal proceedings, and does not authorize the government to

dispense with due process. Respondents provide no evidence that the ERO officer actually conducted a valid evaluation of whether Petitioner had violated any immigration law, nor of whether Petitioner was likely to flee before a warrant could be issued. Although Respondents reference ensuring Petitioner's appearance at removal proceedings, they provide no arguments that once contacted by immigration enforcement and established into the system, Petitioner would not appear for proceedings. Moreover, despite referencing "protecting the community," Respondents provide no argument that Petitioner is a danger to the community. That is because he clearly is not—across his 28 years in the United States he has no criminal history.

Aspiring for "efficient" immigration enforcement cannot come at the expense of violating the due process rights of noncitizens. Efficient immigration enforcement is a laudable goal but it must still comply with due process. And that simply did not happen here. This is a classic example of efficient immigration enforcement while trampling an individual's due process rights, especially in light of the injunction issued in *M-J-M-A-* and notice about proper procedures it provided to immigration enforcement authorities in Oregon where Petitioner was arrested. The *M-J-M-A-* injunction is a clear indication that while the government does have an interest in immigration enforcement, it may not pursue this interest by violating the governing statutes and regulations regarding warrantless arrests of noncitizens. *See* 822 F. Supp. 3d at 1185 ("there is no question . . . the Executive Branch has the authority to deport people who are not lawfully in the United States. That authority is not an unbounded prerogative, but rather the Executive Branch must abide by those laws, its own regulations, and due process."). Therefore, the Court finds that the third *Mathews* factor weighs in Petitioner's favor.

In sum, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his warrantless detention in violation of the relevant statutes, regulations, and the

District of Oregon court order mean that Petitioner's rights under the Fifth Amendment to the United States Constitution were violated.

**C. Administrative Exhaustion Is Not Required**

The Ninth Circuit requires, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts in the Ninth Circuit consider the so-called *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

Respondents argue that Petitioner must exhaust administrative remedies before seeking habeas relief, first by requesting a bond hearing, and then—if he disagrees with the immigration judge's bond decision—by appeal to the Board of Immigration Appeals. Dkt. No. 13 at 7–8. In support, Respondents refer to *Puga*, but do not offer any analysis as to any of the factors. *See id.* In his traverse, Petitioner responds to these arguments by asserting that administrative exhaustion should not be required and that all *Puga* factors weigh in his favor. Dkt. No. 16 at 13–15. As such, the Court will address the *Puga* factors.

As to the first *Puga* factor, Petitioner argues that there is no agency expertise needed to develop facts to determine whether the ERO officers' detention of Petitioner was warrantless, violated the court's order in *M-J-M-A-*, or was a violation of due process. *Id*. at 13. The Court agrees. The instant matter deals, in part, with a constitutional claim—the violation of Petitioner's Due Process rights. Constitutional claims are well suited to consideration by the federal district courts. *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017). Neither an immigration judge nor the BIA has expertise in constitutional claims; therefore, agency expertise is not required for the claim Petitioner brings. *Alejo Amezcua v. Scott*, No. C26-2780, 2026 WL 3161596, at *2 (W.D. Wash. Oct. 22, 2026). Therefore, the first *Puga* factor weighs in Petitioner's favor.

Next, Petitioner argues that the second *Puga* factor weighs in his favor because "ICE officers are continuing to violate the district court's order in *M-J-M-A-* by engaging in a faux warrant process" and, therefore, "[t]he issues presented here . . . are not routine." Dkt. No. 16 at 13. The Court finds Petitioner's arguments convincing. The instant matter is non-routine in that the ERO officers violated an Oregon federal court injunction by arresting Petitioner in Oregon without a warrant. The specific claim Petitioner brings could not be raised by a noncitizen who had been detained by immigration enforcement in Washington (outside the injunction's reach), meaning relaxation of a bond hearing requirement will not result in a widespread deliberate bypass of the administrative scheme. The Court acknowledges that the instant case is not a class action, meaning judicial resolution of this individual petition is unlikely to "provide concrete guidance for a large swath of future administrative proceedings." *Martinez v. Scott*, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025). However, on balance, the Court finds that the second

*Puga* factor slightly weighs in Petitioner's favor given the particularity of his individual circumstance.

As to the third *Puga* factor, Petitioner argues that administrative review will not allow an IJ or the BIA to correct the mistakes at hand because they do not review constitutional claims. Dkt. No. 16 at 14. "Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Montiel Moreno v. Hernandez*, No. C26-1714, 2026 WL 1906522, at *5 (W.D. Wash. June 18, 2026). The Court finds that although bond hearings are routine and Petitioner could be scheduled for one without significant delay, there is still no reason to delay adjudication of his procedural due process claim. *See Garcia v. Casey*, No. C26-6159, 2026 WL 3596012, at *3 (S.D. Cal. Nov. 23, 2026) ("A post-hoc bond hearing where the [IJ] would only consider [a petitioner's] potential flight risk or danger to the community would not cure the harm alleged here—i.e., arrest and detention without a warrant." (alterations in original) (quoting *Barrientos v. Moss*, No. C26-5943, 2026 WL 2283034, at *2 (E.D. Cal. Aug. 7, 2026))). Therefore, the final *Puga* factor weighs in Petitioner's favor.

**D. The Remedy Is Release**

Respondents argue that unlawful arrest claims do not provide a basis for habeas relief and that the "remedy for unlawful arrest is the suppression of evidence obtained therefrom, not release from custody." Dkt. No. 13 at 9 (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040–41 (1984); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1033–34 (9th Cir. 2011)). However, the issue in *Lopez-Mendoza* was whether the petitioner could be summoned to a deportation hearing following an unlawful arrest. 468 U.S. at 1040. The Supreme Court held that "the BIA correctly ruled that '[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding.'" *Id.* That says nothing about the situation at hand. Further, district courts have "a

fair amount of flexibility" in fashioning specific habeas relief. *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). Courts throughout this Circuit have found that release is a proper remedy where a noncitizen was arrested without a warrant. *See, e.g.*, *Garcia*, 2026 WL 3596012, at *5; *Garcia-Juarez v. Blanche*, No. C26-3007, 2026 WL 3540216, at *2–4 (S.D. Cal. Nov. 17, 2026); *Martinez Alaniz v. Slaughter*, No. C26-280, 2026 WL 3410478, at *3–4 (D. Mont. Nov. 10, 2026); *Cayetano-Castillo v. Warden*, No. C26-5300, 2026 WL 3270170, at *5–6 (S.D. Cal. Oct. 30, 2026) (collecting cases); *see also Rivas Gomez v. Scott*, No. C26-3505, 2026 WL 3438023, *3, 6 (W.D. Wash. Nov. 12, 2026) (finding that petitioner's due process rights were violated, in part, because he was arrested without a warrant, and ordering release). Under the facts of this case —where Respondents violated Petitioner's constitutional right to due process when they arrested him without a warrant in a blatant breach of the District of Oregon court order (of which immigration enforcement authorities had had notice for at least six months) and Respondents have not shown cause that his detention has since become lawful, the Court finds that the proper remedy is release.

## IV. CONCLUSION

Accordingly, Petitioners' petition for writ of habeas corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioners from detention **no later than 5:00 p.m. on November 26, 2026**;

(b) SHALL submit to the Court, **within seven (7) days** of Petitioners' release from detention, a declaration or status report confirming that Petitioner has

been released from custody and informing the Court of the date and time of his release;

(2) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 25th day of November, 2026.

Tana Lin
United States District Judge